UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

THOMAS MARMOLEJAS,                    :

                 Petitioner,   :

      - against -                  :

UNITED STATES OF AMERICA,             :

               Respondent.    :

- - - - - - - - - - - - - - - - - -x

```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:                          │
│ DATE FILED: 9/2/10              │
└─────────────────────────────────┘
```

**MEMORANDUM DECISION**

05 Civ. 10693 (DC)
99 Cr. 1048 (DC)

**APPEARANCES:**     THOMAS MARMOLEJAS
                     Defendant Pro Se
                     Reg. No. 48376-054
                     USP-Canaan
                     P.O. Box 300
                     Waymart, Pennsylvania  18472

                     PREET BHARARA, ESQ.
                     United States Attorney for the
                     Southern District of New York
                           By:  Lisa R. Zornberg, Esq.
                                Assistant United States Attorney
                     One Saint Andrew's Plaza
                     New York, New York  10007

CHIN, Circuit Judge

Pro se petitioner Thomas Marmolejas[1] moves for relief from a final judgment or order pursuant to Federal Rules of Civil Procedure 60(b)(4), 60(d)(1), and 60(d)(3) on the grounds that there were fundamental defects in the integrity of his habeas proceeding.  On September 15, 2006, I denied petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Marmolejas v. United States, Nos. 05 Civ. 10693, 99 Cr. 1048, 2006 WL 2642130 (S.D.N.Y. Sept. 15, 2006).  For the reasons that follow, the motion for relief from final judgment or order is also denied.

BACKGROUND

A.  The Facts

The Reyes heroin organization was a large-scale heroin distribution operation run by Juan ("Junior") Matos Reyes out of the Dominican Republic.  (Tr. 363, 375).[2]  In May 1998, Andres

---

[1]     In the instant motion, and in his initial motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, Marmolejas spelled his name "Marmolejos."  At all prior stages of this case -- the trial, the sentencing, and the appeal -- defendant, defense counsel, the Government, and the courts have spelled defendant's name "Marmolejas."  For consistency, I continue that spelling.

[2]     References are as follows:  "Tr." to pages of the trial transcript, "Sen. Tr." to pages of the sentencing transcript, and

Peralta, a member of the organization, hired Jaime Gomez, Marmolejas, and Johnny Martinez to kill Pena-Perez and Nilton ("Barbita") Duran.  (Id. at 383-85).  Junior wanted the two men killed because they had allegedly turned against the organization by robbing one of its own apartments and taking one or two kilos of heroin, between $30,000 and $100,000 in cash, and a beeper that the organization's customers used to contact it.  (Id. at 377, 380, 382-83).

On May 25, 1998, Peralta met with Junior's brother, Robinson Reyes ("Robinson"), Gomez, Marmolejas, and Martinez at 230th Street and Bailey Avenue in the Bronx.  (Id. at 385, 389). Gomez, Marmolejas, Martinez, and Robinson then made their first attempt to locate Pena-Perez and Duran.  (Id. at 389, 392).  They drove to a building in the Bronx and waited four or five hours for Pena-Perez and Duran to emerge from the building, but they did not.  (Id. at 399-401).

On May 26, 1998, the next day, the same individuals met again at 230th Street and Bailey Avenue.  (Id. at 402). Marmolejas drove the group to the same location where they had waited the previous evening, and they waited for Pena-Perez and

---

"Pet'r's Mem." to Marmolejas's memorandum of law in support of the instant motion.

Duran again, for six hours or more.  (<u>Id.</u> at 334, 404, 424, 427).
Finally, Pena-Perez and Duran exited the building, got inside a
Toyota Camry, and drove away.  (<u>Id.</u> at 434, 435, 437).  The men
in the van followed, and when the Camry stopped on Walton Avenue
at a red light, Gomez took a machine gun from a secret
compartment in the van.  (<u>Id.</u> at 441-42).  Gomez got out,
carrying the machine gun, and fired approximately 15 to 20 shots
at the Camry.  (<u>Id.</u> 441-42, 455).  The Camry took off, the van
followed, and the Camry then crashed into another car.  (<u>Id.</u> at
456-57).  Duran exited the Camry and ran.  (<u>Id.</u> at 457-58).
Gomez had returned to the van, but when he saw Duran run from the
Camry, he took a pistol and ran after Duran.  (<u>Id.</u> at 459).

        Several plainclothes officers from the New York City
Police Department were on patrol in the area, and immediately
went to Walton Avenue after hearing the gun shots.  (<u>Id.</u> at 100-
01).  There, they saw Gomez run inside 1729 Walton Avenue
carrying a gun and heard shots being fired inside the building.
(<u>Id.</u> at 102, 155).  The officers followed Gomez into the building
and saw him coming down the stairs.  (<u>Id.</u> at 102-03).  When Gomez
saw the officers, he dropped his weapon and fled up the stairs.
(<u>Id.</u> at 103).  The officers found Duran bleeding on the third
floor landing.  (<u>Id.</u> at 105, 115).  Duran yelled "that guy just

-4-

shot me" and pointed up the stairs.  (Id. at 158).  The officers
caught Gomez on the roof and arrested him.  (Id. at 159).  Pena-
Perez was found dead in the Camry.  (Id. at 108, 131, 160).

In the meantime, Marmolejas and Robinson drove off and
discarded the weapons.  (Id. at 693-94).  Later that evening,
Marmolejas collected $37,000 from members of the organization.
(Id. at 472, 637-39, 484-86, 694-95).

Marmolejas was arrested on June 4, 1998, inside the
same van that he had driven to the murder scene.  (Id. at 884,
909).  The van had been painted a different color and re-stocked.
(Id. at 856-61, 871-79).  The arresting officers found the van's
secret compartment, which could only be operated from the
driver's seat.  (Id. at 994-96).  The compartment contained a .38
caliber revolver, a 9-millimeter Smith & Wesson semi-automatic
pistol, a .22 caliber semi-automatic pistol, a 9-millimeter semi-
automatic pistol, numerous rounds of live ammunition, and a
silencer.  (Id. at 864-65, 871-73, 876).

**B.  Prior Proceedings**

The original indictment was filed on October 12, 1999,
but was superseded by subsequent indictments filed on October 16,
2001, and November 20, 2001.  The second superseding indictment
contained eight counts.

-5-

        Count One charged the defendants with conspiracy to
commit robbery and extortion, thereby obstructing, delaying, and
affecting commerce and the movement of articles and commodities
in commerce, in violation of 18 U.S.C. § 1951.  Count Two charged
conspiracy to commit murder-for-hire, and Count Three charged
substantive murder-for-hire, both in violation of 18 U.S.C. §
1958.  Count Four charged conspiracy to distribute and possess
with intent to distribute one kilogram and more of heroin, in
violation of 21 U.S.C. § 846.  Count Five charged defendants with
murder while engaged in a major drug conspiracy, in violation of
21 U.S.C. § 848(e)(1)(A).  Count Six charged defendants with
using and carrying firearms in relation to crimes of violence, in
violation of 18 U.S.C. § 924(c).  Count Seven charged murder in
the course of a § 924(c) violation, pursuant to 18 U.S.C. §
924(j), and Count Eight, filed against Marmolejas alone, charged
possession of a firearm with an obliterated serial number, in
violation of 18 U.S.C. § 922(k).

        Valerie Amsterdam represented Marmolejas at trial and
at sentencing.  Marmolejas pled not guilty on November 27, 2001,
and the trial of him and Jaime Gomez began on January 14, 2002.
On February 1, 2002, the jury found Marmolejas guilty on all
counts.  On July 25, 2002, I vacated the guilty verdict on Count

-6-

Five, finding that the jury's guilty verdict on that count was inconsistent with its finding with respect to Count Four that the Government failed to prove that Marmolejas knew the conspiracy involved a kilogram or more of heroin.  See United States v. Gomez, 210 F. Supp. 2d 465, 479 (S.D.N.Y. 2002).  I denied Marmolejas's post-trial motions in all other respects.  Id. at 467.

On September 19, 2002, Marmolejas was sentenced on Counts One, Two, Three, Four, Six, Seven, and Eight to life imprisonment, followed by a consecutive ten-year term and three year's supervised release, and $700 in special assessments.

With Amsterdam as his counsel, Marmolejas filed a timely notice of appeal to the United States Court of Appeals for the Second Circuit on September 25, 2002.  On October 27, 2004, the Second Circuit affirmed Marmolejas's conviction and sentence. See United States v. Marmolejas, 112 F. App'x 779, 784 (2d Cir. 2004).  On April 21, 2004, Amsterdam was indicted in the Eastern District of New York for crimes relating to the fraudulent billing of the government for Criminal Justice Act fees.  United States v. Amsterdam, No. 04 Cr. 384 (ADS) (WDS) (E.D.N.Y. Apr. 21, 2004).  On April 4, 2005, Amsterdam pled guilty to conspiracy to defraud the United States, United States v. Amsterdam, No. 04

-7-

Cr. 384 (ADS) (WDS) (E.D.N.Y. Apr. 4, 2005), and on August 31, 2005, Amsterdam was formally relieved as counsel for Marmolejas.

New counsel, Laurie Hershey, was appointed by the Second Circuit to consider whether there should be a remand to this Court in light of United States v. Booker, 543 U.S. 220 (2005) (holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" and making sentencing guidelines advisory rather than mandatory).  By letter dated November 1, 2005, Hershey advised the Second Circuit that she did not see any basis for a Booker remand because the statute under which Marmolejas was sentenced, 18 U.S.C. § 1958, mandated death or a life sentence, and a life sentence was the statutory minimum sentence.  (Pet'r's Mem. Ex. C).

On December 12, 2005, Marmolejas filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, citing grounds of ineffective assistance of counsel.  On February 6, 2006, Marmolejas filed a Motion for Leave to Amend, in which he set forth several additional arguments.  On September 15, 2006, I denied Marmolejas's motion under § 2255.  Marmolejas, 2006 WL 2642130.  On May 17, 2007, the Second Circuit denied Marmolejas's application for a certificate of appealability.  The

-8-

Supreme Court denied Marmolejas's Petition for a writ of certiorari on October 9, 2007.  <u>Marmolejos v. United States</u>, 552 U.S. 960 (2007).

In the meantime, Marmolejas filed a motion in the district court to set aside a "void judgment" pursuant to Federal Rule of Civil Procedure 60(b)(4).  I denied the motion on November 13, 2006.  <u>Marmolejas v. United States</u>, No. 05 Civ. 10693 (S.D.N.Y. Nov. 13, 2006).  The Second Circuit denied a certificate of appealability on June 23, 2008.  The Supreme Court denied Marmolejas's petition for a writ of certiorari on December 15, 2008.  <u>Marmolejos v. United States</u>, 129 S. Ct. 774 (2008).

Marmolejas further filed a petition for a writ of habeas corpus with the Supreme Court, which was denied on January 14, 2008.  <u>In re Marmolejos</u>, 552 U.S. 1139 (2008).  The Supreme Court also denied Marmolejas's petition for rehearing on February 25, 2008.  <u>In re Marmolejos</u>, 552 U.S. 1240 (2008).

On March 21, 2008, Marmolejas filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Eastern District of Kentucky, challenging his conviction under the Fifth Amendment.[3]  The

---

[3]    At the time Marmolejas filed this petition, he was confined in a U.S. penitentiary in Inez, Kentucky.

District Court denied the petition on April 16, 2008.  <u>Marmolejas</u>
<u>v. Mukasey</u>, No. 08 Civ. 59 (KKC), 2008 WL 1776593 (E.D. Ky.
2008).

On May 26, 2009, in the United States District Court
for the Middle District of Pennsylvania, Marmolejas filed a
petition for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2241, alleging actual innocence, and that his sentence was
executed in violation of the Fifth Amendment.[4]  On July 29, 2009,
the court denied the motion.  <u>Marmolejos v. Holder</u>, No. 09 Civ.
0988 (M.D. Pa. July 29, 2009).

C.    **The Present Motion**

In the instant motion, Marmolejas argues that the
denial in 2006 of his § 2255 motion filed in 2005 was defective
in three ways.

First, Marmolejas contends that the United States
committed fraud upon the court by misrepresenting his sentencing
claim to the Court, thereby preventing the Court from
adjudicating his claim.  Because the Government did not
misrepresent Marmolejas's claim, this argument is rejected below.

---

[4]    Marmolejas is presently confined in a U.S. penitentiary
in Waymart, Pennsylvania.

-10-

Second, Marmolejas claims that the Court failed to adjudicate the merits of three of his claims, which he alleged in his Motion to Amend, regarding alleged ineffective assistance of counsel.  The Government never responded to, and I never ruled on, Marmolejas's Motion to Amend.  For purposes of this motion, I will construe Marmolejas's Motion to Amend as having effectively amended his § 2255 motion.  To the extent that Marmolejas asserted arguments in his Motion to Amend that were not addressed in my previous decision, I consider those claims on their merits and reject them below.

## DISCUSSION

Marmolejas purportedly seeks relief from judgment pursuant to Federal Rules of Civil Procedure 60(b)(4), 60(d)(1), and 60(d)(3).

Rule 60 "may not be used to challenge a movant's underlying conviction or sentence after that movant's habeas petition attacking the same conviction or sentence on the same basis has been denied." Mims v. United States, No. 08 Civ. 1400 (JCH), 2010 U.S. Dist. LEXIS 77297, at *3 (D. Conn. July 30, 2010).  A Rule 60 motion that "seeks to revisit the federal court's denial on the merits of a claim for relief should be treated as a successive habeas petition." Gonzalez v. Crosby,

-11-

545 U.S. 524, 534 (2005). A motion for relief from final judgment that attacks "some defect in the integrity of the habeas proceeding," however, is not a second or successive habeas petition. Id. at 532. Here, with two exceptions,[5] Marmolejas attacks the integrity of the habeas proceeding, as he claims that the Government perpetrated fraud on the court and that the Court failed to consider several arguments advanced in his amended petition. See Gonzalez v. Crosby, 545 U.S. 524, 532 (2005); Spitznas v. Boone, 464 F.3d 1213, 1225 (10th Cir. 2006) ("[Petitioner's] contention that the district court failed to consider one of his habeas claims represents a 'true' 60(b) claim. It asserts a defect in the integrity of the federal

---

[5]     Marmolejas argues that the Government misrepresented the applicable statutory maximum sentence and that his trial counsel was ineffective for failing to urge the Court to apply a lower base offense level at sentencing. Both of these claims are disguised efforts to reassert Marmolejas's claim regarding sufficiency of the evidence for a base offense level of 43 (the level applicable to first degree and premeditated murder). I addressed and rejected this argument in my 2006 memorandum decision. Marmolejas's veiled arguments regarding the merits of this claim fall outside the scope of Rule 60 relief and, accordingly, they are dismissed. Gitten v. United States, 311 F.3d 529 (2d Cir. 2002). Moreover, for the reasons set forth in my 2006 memorandum decision, these argument have no merit. The jury found Marmolejas guilty of murder-for-hire. A murder committed in exchange for a previously agreed upon sum is inherently premeditated, and thus a murder in the first-degree. Id. Thus, because these claims fall outside the scope of Rule 60 and are meritless they are dismissed.

habeas proceedings."). Thus, as Marmolejas addresses the

integrity of the proceedings and not the merits of his claims, I

conclude that Marmolejas asserts a proper 60(b) claim.

## A.  Rule 60 Standards

Rule 60(b)(4) allows a court to relieve a party from a

final judgment, order, or proceeding because "the judgment is

void." Fed. R. Civ. P. 60(b)(4).  A judgment is void "only in

the rare instance where a judgment is premised either on a

certain type of jurisdictional error or on a violation of due

process that deprives a party of notice or the opportunity to be

heard." United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct.

1367, 1371 (2010); see Grace v. Bank Leumi Trust Co. of N.Y., 443

F.3d 180, 193 (2d Cir. 2006).[6]

---

[6]     A motion under Rule 60(b) must be made within a
reasonable time.  See Fed. R. Civ. Pro. 60(c)(1).  Marmolejas
brings the instant motion almost four years after I ruled on his
habeas petition.  He should not have waited this long to raise
these claims.  Moreover, Marmolejas could have raised all of his
current claims in 2006 when he moved to set aside his conviction
under Rule 60(b)(4) for lack of subject matter jurisdiction.
Marmolejas v. United States, 05 Civ. 10693 (DC) (S.D.N.Y. Nov. 6,
2006).  Nonetheless, I will give Marmolejas the benefit of the
doubt, and consider his arguments on the merits.  See "R" Best
Produce, Inc. v. DiSapio, 540 F.3d 115, 124 (2d Cir. 2008)
("Although Rule 60(b) provides that most motions for relief,
including a motion under Rule 60(b)(4), must be made within a
reasonable time, this Court has been exceedingly lenient in
defining the term reasonable time, with respect to voidness
challenges." (internal quotations marks and citation omitted)).

-13-

Rules 60(d)(1) and (3), respectively, permit a court to "entertain an independent action to relieve a party from a judgment, order, or proceeding," or, "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(1), (3). In deciding whether to entertain an independent action for relief, a court must exercise discretion and look to traditional equitable principles. See Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 661 (2d Cir. 1997). To obtain equitable relief through an independent action, claimants must "(1) show that they have no other available or adequate remedy; (2) demonstrate that movants' own fault, neglect, or carelessness did not create the situation for which they seek equitable relief; and (3) establish a recognized ground -- such as fraud, accident, or mistake -- for the equitable relief." Id. at 662.

Marmolejas does not make clear under which provision of Rule 60 each of his arguments falls. The Court surmises, however, that Marmolejas argues as follows: (1) Marmolejas is entitled to relief under Rule 60(d)(3) because the Government committed fraud on the court by misrepresenting Marmolejas's sentencing claim and (2) Marmolejas is entitled to relief under Rule 60(b)(4)'s due process protections and Rule 60(d)(1)'s

-14-

equitable considerations because the Court did not explicitly address all of Marmolejas's claims in its last decision.

As set forth below, I conclude that Marmolejas is not entitled to relief under Rule 60(d)(3) because the Government did not commit fraud on the court. Moreover, I conclude that Marmolejas is not entitled to relief from judgment under Rules 60(b)(4) and 60(d)(3) as he has not suffered any due process violation and has not demonstrated a basis for equitable relief. To the extent that my previous decision did not explicitly address all of Marmolejas's habeas claims, those claims are discussed and rejected below. Accordingly, Marmolejas is not entitled to relief, and my previous decision denying his motion under 28 U.S.C. § 2255 stands.

## A.   Claim One:   Sentencing

Marmolejas contends that the Government committed fraud on the court by deliberately misrepresenting to the Court his claim that his sentence should be reviewed in light of Booker, 543 U.S. at 245-46. Petitioner argues that his habeas petition should be reopened and his sentencing claim adjudicated on the merits.

-15-

### 1.   **Applicable Law**

Fraud on the court is distinguished from fraud perpetrated on adverse parties.  See <u>King v. First Am. Investigations, Inc.</u>, 287 F.3d 91, 95 (2d Cir. 2002); <u>Gleason v. Jandrucko</u>, 860 F.2d 556, 559 (2d Cir. 1998).  Fraud on the court encompasses "only that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases."  <u>Hadges v. Yonker Racing Corp.</u>, 48 F.3d 1320, 1325 (2d Cir. 1995) (internal quotation marks omitted) (citing <u>Kupferman v. Consol. Research & Mfg. Corp</u>, 459 F.2d 1072, 1078 (2d Cir. 1972)).

### 2.   **Application**

Marmolejas attempts to show that the Government misrepresented the fact that <u>Booker</u> was decided prior to his conviction becoming final, which would make him eligible for a <u>Booker</u> review.  (Pet'r's Mem. 13).  This claim fails.

The Government never argued that <u>Booker</u> was decided after Marmolejas's conviction became final.  (<u>See</u> Pet'r's Mem. Ex. B 4).  The Government stated only that <u>Booker</u> was not decided until months after Marmolejas's appeal had been denied by the

-16-

Second Circuit, and that, therefore, Amsterdam could not have been ineffective for not raising such an argument.  (Id.).

Indeed, no party or court disputed that Marmolejas's conviction had not yet become final when Booker was issued, and accordingly, Marmolejas was assigned an attorney for the sole purpose of examining any potential Booker claims.  (Pet'r's Mem. Ex. C).  Ms. Hershey, the attorney assigned to Marmolejas for the purpose of advising the Second Circuit on the necessity of a Booker remand, concluded that Marmolejas was not entitled to remand.  (Pet'r's Mem. Ex. C).

B.   **Claim Two:  Ineffective Assistance of Counsel**

Marmolejas contends that his claims regarding the deprivation of his right to effective assistance of counsel were never adjudicated.  He argues that Amsterdam was ineffective because she did not challenge the sufficiency of the evidence presented for the consideration element of the murder-for-hire conviction or the potential violation of his Sixth Amendment right to confront all witnesses used against him.  To the extent these claims were not addressed in my previous decision, I address and reject them below.

1.  **Applicable Law**

To prove ineffective assistance of counsel, Marmolejas must show that (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) he was prejudiced by counsel's deficient performance.  See Strickland v. Washington, 466 U.S. 668, 686-88 (1984); United States v. Vegas, 27 F.3d 773, 777 (2d Cir. 1994).

Although the Strickland test originated for evaluating claims of ineffective assistance of trial counsel, it has been extended to apply to appellate counsel.  See McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992).  Appellate counsel is not required to raise all non-frivolous arguments.  Mayo, 13 F.3d at 533. Consequently, to succeed on an ineffective assistance of appellate counsel claim, it is not sufficient to demonstrate that counsel omitted a non-frivolous argument.  Id.  "[I]ndeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy."  Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989); accord Smith v. Robbins, 528

U.S. 259, 288 (2000).  Failure to raise an argument on appeal
constitutes ineffective assistance only when the omitted issue is
"'clearly stronger'" and more significant than those presented.
Mayo, 13 F.3d at 533 (quoting Gray v. Greer, 800 F.2d 644, 646
(7th Cir. 1985)).

     To demonstrate prejudice, Marmolejas must establish a
reasonable probability that the omitted "'claim would have been
successful before the [appellate court].'"  See Mayo, 13 F.3d at
534 (quoting Claudio, 982 F.2d at 803).

    2.   **Application**

        a.   **Sufficiency of Evidence for Consideration**
            **Element of Murder-for-Hire Statute**

     Marmolejas argues that counsel performed deficiently in
failing to challenge the sufficiency of the evidence used to
convict him of murder-for-hire in violation of 18 U.S.C. § 1958.
(Pet'r's Mem. Ex. A 31-33).  He contends that the Government
failed to satisfy the consideration element of the statute.
(Id.).  To the extent that I did not previously address this
argument, it is rejected for the reasons set forth below.

### i.    Applicable Law

Under 18 U.S.C. § 1958, an individual commits murder-for-hire when he:

> travels in or causes another . . . to travel
> in interstate commerce, or uses or causes
> another . . . to use . . . any facility of
> interstate or foreign commerce, with intent
> that a murder to be committed . . . <u>as
> consideration for the receipt of, or as
> consideration for a promise to pay anything
> of pecuniary value</u> . . . .

18 U.S.C. § 1958 (emphasis added).

In evaluating a claim of insufficiency of evidence, the court must review the evidence in the light most favorable to the prosecution. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  A guilty verdict should be affirmed if "'any rational trier of fact could have found the essential elements' of the charged crime 'beyond a reasonable doubt.'"  <u>United States v. Salmonese</u>, 352 F.3d 608, 618 (2d Cir. 2003) (quoting <u>Jackson</u>, 443 U.S. at 319). In cases where the facts support conflicting inferences, the reviewing court must presume that the jury "resolved any such conflicts in favor of the prosecution, and must defer to the resolution."  <u>Jackson</u>, 443 U.S. at 326; <u>see also</u> <u>United States v. Chacko</u>, 169 F.3d 140, 148 (2d Cir. 1999).

-20-

## ii.  **Application**

There was sufficient evidence with which to satisfy the consideration element of the murder-for-hire statute.  Marmolejas committed the murder and attempted murder for a previously agreed upon sum of money.  (Tr. 383-85).  The evening of the murder, Marmolejas collected $37,000 from members of the organization. (Id. at 472, 637-39, 484-86, 694-95).  Based on these facts, a rational trier of fact could conclude that the $37,000 was pecuniary consideration in exchange for the murder of Pena-Perez and the attempted murder of Duran.  Thus, Marmolejas cannot demonstrate prejudice as there is not a reasonable probability that his claim would have been successful on appeal because there was sufficient evidence with which to find that there was consideration for the murder-for-hire conviction.  See Strickland, 466 U.S. at 669; Salmonese, 352 F.3d at 618.

### b.  **Right to Confrontation**

Next, Marmolejas argues that my previous decision did not consider his argument that counsel was ineffective for failing to raise a Confrontation Clause argument on appeal. Marmolejas argues that the introduction of co-defendant Gomez's testimony at their joint trial violated Marmolejas's right to

-21-

confront all witnesses used against him, as the jury improperly considered Gomez's statement against him in convicting him on Count One of the indictment -- conspiracy to commit robbery and extortion in violation of 18 U.S.C. § 1951.  To the extent I did not address this ineffective assistance claim in my previous decision, it is considered and rejected for the reasons set forth below.

### i.   Applicable Law

Count one charged the defendants with conspiracy to commit robbery and extortion, which thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce.  Specifically, defendants were charged with "conspir[ing] to abduct Johan Pena Perez, a/k/a 'El Professor,' and Nilton Duran, a/k/a 'Barbita,' in the Bronx, New York, to obtain narcotics, narcotics proceeds, beepers, and other property."  (Indictment p. 1-2).

A defendant is deprived of his Sixth Amendment right to confrontation when his non-testifying co-defendant's confession implicates the defendant at a joint trial regardless of whether the trial court instructed the jury that the confession could only be used against the co-defendant.  <u>Bruton v. United States</u>,

391 U.S. 123, 137 (1968).  The confrontation clause, however, is
not violated by the admission of a non-testifying co-defendant's
testimony when the confession is redacted to eliminate the
defendant's name and any reference to his or her existence.
Richardson v. Marsh, 481 U.S. 200, 211 (1987); United States v.
Jass, 569 F.3d 47, 61 (2d Cir. 2009).

        The Second Circuit has held that "defense counsel may
waive a defendant's Sixth Amendment right to confrontation where
the decision is one of trial tactics or strategy that might be
considered sound."  United States v. Plitman, 194 F.3d 59, 64 (2d
Cir. 1999).  In Plitman, the court found that there were "several
tactical advantages" of the defendant's decision to allow the
testimony of his co-defendant.  Id.  Moreover, a court must
"indulge a strong presumption" that counsel's actions were "sound
trial strategy."  Strickland, 466 U.S. at 689.

        Bruton errors are reviewed for harmlessness beyond a
reasonable doubt.  Courts consider whether "properly admitted
evidence of guilt is so overwhelming, and the prejudicial effect
of the codefendant's admission is so insignificant by comparison,
that it is clear beyond a reasonable doubt that the improper use
of the admission was harmless error."  Schneble v. Florida, 405

U.S. 427, 430 (1972); see United States v. Jass, 569 F.3d 47, 55
(2d Cir. 2009) (citing United States v. Vitale, 459 F.3d 190, 195
(2d Cir. 2006)).

### ii.  Application

Although Marmolejas's trial counsel, Amsterdam,
expressly chose not to waive Marmolejas's right to raise Bruton
issues, her decision not to redact the co-defendant's statements
was "strategic."  (Tr. 46:3, 840:14-21).  After discussion with
the Government and Court about how to handle the Bruton issue,
Amsterdam stated for the record the reasons why she allowed the
co-defendant's testimony to be entered un-redacted.  (Id. at
45:15-17).  First, Marmolejas acknowledged that he was at the
crime scene (though, without knowledge of the plan), and thus
relied on a defense of "mere presence."  (Id. at 45:18).  Second,
Amsterdam argued that the co-defendant's statement could in fact
be referencing a different individual in the case who shared the
same first name as Marmolejas, but spelled it differently.  (See
id. at 45:22-25).  Therefore, Amsterdam was acting strategically
in choosing to leave the co-defendant's statements un-redacted,
and her decision not to raise a challenge regarding the Bruton
issue did not fall below an objective standard of reasonableness.

Moreover, as to the <u>Bruton</u> issue, even assuming Marmolejas has a reasonable argument, it would not succeed on appeal. Marmolejas was not prejudiced. As I noted at trial, there is sufficient evidence in the record to support a conviction on Count One against Marmolejas. (Tr. 1454-55). Marmolejas testified at trial that he knew that he and the others in the van were waiting outside of the building in the Bronx to "grab this guy" to get Peralta's beeper, which Marmolejas understood to be in connection with the drug business. (<u>Id.</u> at 1238-39, 1241, 1258, 1278-79). Marmolejas also admitted that he understood that Martinez was there with him in the van "as muscle to get the beepers." (<u>Id.</u> at 1281). This evidence is sufficient for the jury to have found Marmolejas guilty on Count One, which charged the defendants with conspiring to abduct Pena-Perez and Duran to "obtain narcotics, narcotics proceeds, beepers and other property." (Indictment p. 1-2).

For the reasons set forth above, Marmolejas's counsel was not ineffective for refraining from raising his alleged Confrontation Clause argument on appeal.

-25-

c.   <u>Constructive Amendment of § 924(c) Count</u>

In his 2006 motion for leave to amend his habeas petition, Marmolejas alleged that counsel was ineffective for failing to raise on appeal that the jury instruction constructively amended count six of the indictment, a penalties charge under 18 U.S.C. § 924(c), by "combining the elements of the separate 'use or carriage' and 'possession' offenses when the indictment charged only that the defendants 'used and carried firearms' during and in relation to the crimes charged in counts one through five." (Mot. for Leave to Amend 9-11).  Although it is not clear that Marmolejas raises this argument in his current motion, I address and reject this claim below.

i.   <u>Applicable Law</u>

18 U.S.C. § 924(c) applies to "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c).  The text of the statute outlines two distinct offenses -- (1) <u>using or carrying a firearm</u> during and in relation to a drug trafficking crime, and (2) <u>possessing a firearm</u> in furtherance of

a drug trafficking crime.  <u>United States v. Combs</u>, 369 F.3d 925,

930 (6th Cir. 2004) (emphasis added).

      An indictment has been constructively amended "'[w]hen

the trial evidence or the jury charge operates to broaden[] the

possible bases for conviction from that which appeared in the

indictment.'"  <u>United States v. Rigas</u>, 490 F.3d 208, 225 (2d Cir.

2007) (quoting <u>United States v. Milstein</u>, 401 F.3d 53, 65 (2d

Cir. 2005)).  "To prevail on a constructive amendment claim, a

defendant must demonstrate that either the proof at trial or the

trial court's jury instructions so altered an essential element

of the charge that, upon review, it is uncertain whether the

defendant was convicted of conduct that was the subject of the

grand jury's indictment."  <u>United States v. Frank</u>, 156 F.3d 332,

337 (2d Cir. 1998).  Thus, not all modifications constitute

constructive amendments.  <u>United States v. Salmonese</u>, 352 F.3d

608, 621 (2d Cir. 2003).

      There is no constructive amendment if the defendant was

given "notice of the core of criminality to be proven at trial."

<u>Rigas</u>, 490 F.3d at 228 (citing <u>United States v. Patino</u>, 962 F.2d

263, 266 (2d Cir. 1992)).  In addition, the jury instruction must

be viewed in its entirety and "not on the basis of excerpts taken

-27-

out of context." <u>United States v. Clemente</u>, 22 F.3d 477, 483 (2d
Cir. 1994) (citing <u>United States v. Mollica</u>, 849 F.2d 723, 729
(2d Cir. 1988)).

### ii. **Application**

Count Six of the indictment charged that defendants
"knowingly used and carried firearms . . . during and in relation
to crimes of violence and narcotics trafficking." (Operative
Indictment 6). Thus, defendants were charged with 924(c)'s "use
of carriage" offense and not the "possession" offense.

I inserted a reference to possession in the jury
charge. When instructing the jury on the necessary proof of
scienter, I noted that the evidence must show that defendant
"knowingly carried or used or possessed a firearm." (Tr.
1605:19-24). This instruction does not qualify as a constructive
amendment and did not prejudice defendant. Indeed, for the
reasons set forth below, there is no reasonable uncertainty as to
whether Marmolejas was convicted of conduct that was the subject
of the grand jury's indictment. <u>Frank</u>, 156 F.3d at 337.

During the trial, I spent considerable time defining
"use" and "carriage" for the jury. I read Count Six of the
indictment verbatim to the jury (Tr. 1601:15-23), and I

-28-

instructed the jury using the exact language of the first prong
of 18 U.S.C. 924(c), the "use or carriage" charged in the
indictment.  I did not instruct the jury on the elements needed
to prove the "possession" offense, which was not part of the
indicted crime.  (Id. at 1601:24-1602:3).  With respect to the
definition of "use," I reiterated that "mere possession of a
firearm at or near the site of the crime without active
employment" is not sufficient to constitute "use" of the firearm.
(Id. at 1604:18-21).  Further, I explained that to convict the
defendant of carriage of a firearm, the defendant did not
necessarily have to "hold the firearm physically" or "have actual
possession of it on [his] person."  (Id. at 1605:2-5).  See
Muscarello v. United States, 524 U.S. 125, 127 (1998) (holding
that the phrase "carries a firearm" applies to a person who
knowingly possesses and conveys firearms in a vehicle, including
in the locked glove compartment).

          The jury instructions did not so alter an essential
element of the charge that it is uncertain whether Marmolejas was
convicted of "carrying" or "using" a firearm, the indicted
charge.  See Frank, 156 F.3d at 337; United States v. Knuckles,
581 F.2d 305, 311 (finding no constructive amendment because

-29-

defendant's "substantial rights" had not been affected when indictment charged possession and distribution of heroin, and jury instruction permitted jury to convict if they found substance to be either cocaine or heroin). Indeed, my instructions, taken as a whole, clearly defined the elements of the charged crime and expressly rejected any argument based on mere possession. Marmolejas and the jury were both given full notice of the "core of criminality to be proven at trial. Rigas, 490 F.3d at 228.

For the reasons set forth above, Amsterdam did not act unreasonably in choosing to omit this argument on appeal, and Marmolejas suffered no prejudice. Mayo, 13 F.3d at 534.

## C.  Claim 3: "One Full Opportunity" for Meaningful Collateral Review

Marmolejas also claims that 28 U.S.C. § 2255 and the Antiterrorism and Effective Death Penalty Act guarantee him "one full opportunity for meaningful collateral review." See Ching v. United States, 298 F.3d 174, 177 (2d Cir. 2002). I have now addressed all of Marmolejas's claims, and thus he has had his opportunity for collateral review.

-30-

## CONCLUSION

For the reasons set forth above, Marmolejas has failed to demonstrate any basis for relief pursuant to Federal Rules of Civil Procedure 60(b)(4), 60(d)(1), and 60(d)(3).  Marmolejas is not entitled to relief under Rule 60(d)(3) as the Government did not commit fraud on the court.  Likewise, Marmolejas is not entitled to relief under Rules 60(d)(1) or 60(d)(3) because he has not demonstrated that my prior decision is void or that he is entitled to relief from judgment based on equitable considerations.  To the extent I did not explicitly address any of the claims presented by Marmolejas in his previous application for habeas relief, those claims have been considered and rejected above.  Accordingly, Marmolejas is not entitled to relief from judgment and his motion is denied.

SO ORDERED.

Dated:      New York, New York
            September 2, 2010

                                        DENNY CHIN
                                        United States Circuit Judge
                                        Sitting by Designation

-31-