UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| - v - | : | **MEMORANDUM DECISION** |
| THOMAS MARMOLEJOS, | : | 99 Cr. 1048 (DC) |
| a/k/a THOMAS MARMOLEJAS, | | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**APPEARANCES:**         AUDREY STRAUSS, ESQ.
Acting United States Attorney for the
Southern District of New York
    By:   Kiersten A. Fletcher, Esq.
        Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY  10007

THOMAS MARMOLEJOS
Defendant *Pro Se*
FCI Otisville, P.O. Box 1000
Otisville, NY  10963

**CHIN, Circuit Judge**

On June 10, 2020, the Second Circuit granted defendant Thomas Marmolejos[1] leave to file a second or successive motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C § 2255.  *See* Dkt. No. 211.  Proceeding *pro se*, Marmolejos moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, arguing that (1) two of his counts of conviction -- Counts Six and Seven -- cannot stand in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019), and (2) the life sentences imposed on two of the other counts of conviction -- Counts Two and Three -- were in excess of the maximum authorized by law.  *See* Dkt. No. 214, at 2, 29; Dkt. No. 221, at 2.  For the reasons set forth below, the motion is **DENIED**.

## BACKGROUND

**A.   The Facts**

The facts are set forth in prior decisions of the Court, *see Marmolejas v. United States*, No. 05 Civ. 10693 (DC), 2010 WL 3452386, at **1-2 (S.D.N.Y. Sept. 2, 2010); *United States v. Gomez*, 644 F. Supp. 2d 362, 366-67 (S.D.N.Y. 2009), and may be summarized as follows:

---

[1]   In prior stages of this case -- the trial, sentencing, and appeal -- defendant, defense counsel, the Government, and the courts spelled defendant's name "Marmolejas."  On November 1, 2012, defendant moved to correct various clerical errors in his final judgment, including the spelling of his name to "Marmolejos."  I granted his motion with respect to the spelling of his name.  Dkt. No. 171 at 1.

The Reyes heroin organization was a large-scale heroin distribution operation run by Juan Matos Reyes out of the Dominican Republic.  In May 1998, Marmolejos and two other individuals -- Jaime Gomez and Johnny Martinez -- were hired by Andres Peralta, a member of the Reyes heroin organization, to kill Johan Pena-Perez and Nilton Duran, two men who had allegedly stolen heroin and cash from the organization.

On May 25, 1998, Peralta met with Gomez, Marmolejos, Martinez, and Robinson Reyes, another conspirator, in the Bronx.  That same day, Gomez, Marmolejos, Martinez and Reyes made their first attempt to locate Pena–Perez and Duran, as they drove to a location in the Bronx and waited four or five hours for Pena–Perez and Duran, but the two men did not appear.

On May 26, 1998, Marmolejos drove the same group to the same building in the Bronx to wait again for Pena-Perez and Duran.  Eventually, Pena-Perez and Duran exited the building and drove away in a Toyota Camry.  Marmolejos followed their vehicle, and when the Camry reached a red light, Gomez got out and fired 15 to 20 shots at the Camry with a machine gun.  The Camry crashed into another car, and Duran exited the vehicle and fled.  Gomez ran after Duran.  Several plainclothes New York City Police Department officers, who were patrolling the area when they heard gunshots, saw Gomez run into 1729 Walton Avenue.  They entered the building and encountered Gomez, who dropped his weapon and fled up the stairs upon seeing the

officers. The officers found Duran bleeding on the third floor. Duran yelled, "that guy just shot me," pointing up the stairs; the officers later found and arrested Gomez on the roof. Pena-Perez was found dead in the Camry. Meanwhile, Marmolejos had driven away. Later that evening, he was paid $37,000 by the organization.

On June 4, 1998, Marmolejos was arrested in his van. Officers found a secret compartment in the van, which contained a .38 caliber revolver, a 9-millimeter Smith & Wesson semi-automatic pistol, a .22 caliber semi-automatic pistol, a 9-millimeter semiautomatic pistol, numerous rounds of live ammunition, and a silencer.

### B.     Prior Proceedings

#### 1.     Indictment, Jury Trial, and Sentencing

On November 20, 2001, the government filed a superseding indictment charging eight counts. *See* Dkt. No. 37. Count One charged the defendants with conspiracy to commit robbery and extortion in violation of 18 U.S.C. § 1951; Count Two charged conspiracy to commit murder-for-hire in violation of 18 U.S.C. § 1958; Count Three charged substantive murder-for-hire in violation of 18 U.S.C. § 1958; Count Four charged conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin in violation of 21 U.S.C. § 846; Count Five charged murder while engaged in a major drug conspiracy in violation of 21 U.S.C. §848(e)(1)(A); Count Six charged using and carrying firearms in relation to the narcotics offenses and crimes of violence charged in Counts One through Five in violation of 18 U.S.C. § 924(c); Count

4

Seven charged murder in the course of a § 924(c) violation, in violation to 18 U.S.C. § 924(j); Count Eight charged possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).

Marmolejos and his co-defendant Gomez pleaded not guilty, and their trial began on January 14, 2002. On February 1, 2002, the jury convicted both defendants on all counts.[2] The special jury form did not indicate which underlying offenses predicated the Count Six charge, although it described Count Six as charging using and carrying a firearm during and in relation to a crime or violence "and/or" a narcotics trafficking crime. Dkt. No. 214 at 58. On September 19, 2002, this Court sentenced Marmolejos principally to a term of life imprisonment on the Counts Two, Three, and Seven, a consecutive term of 120 months on Count Six, a concurrent term of 240 months on Counts One and Four, and a concurrent term of 120 months on Count Eight. On October 27, 2004, the Second Circuit affirmed Marmolejos' convictions. *United States v. Marmolejas*, 112 F. App'x 779, 784 (2d Cir. 2004), *cert. denied, Gomez v. United States*, 546 U.S. 868 (2005).

2. **Post-Appeal Motions**

On September 15, 2006, I denied Marmolejos's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the basis of ineffective assistance

---

[2] I later vacated Marmolejos's conviction on Count Five on inconsistency grounds. *See United States v. Gomez*, 210 F. Supp. 2d 465, 479 (S.D.N.Y. 2002).

5

of counsel.  *Marmolejas v. United States*, No. 05 CIV. 10693 DC, 2006 WL 2642130, at *8 (S.D.N.Y. Sept. 15, 2006).  Marmolejos subsequently filed additional challenges to his conviction and sentence, all of which were denied (except with respect to the spelling of his name).  *See, e.g.*, *United States v. Marmolejos*, No. 99 Cr. 1048 (DC), 2013 WL 2003241 (S.D.N.Y. May 10, 2013); *Marmolejos* v. United States, No. 05 Civ. 10693 (DC), 2010 WL 3452386 (S.D.N.Y. Sept. 2, 2010); *Marmolejas v. Mukasey,* No. 08 Civ. 59 (KKC), 2008 WL 1776593 (E.D. Ky. 2008) (denying petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241); *Marmolejas v. United States,* No. 05 Civ. 10693, 2006 WL 2642130 (S.D.N.Y. Sept. 15, 2006).

On June 28, 2016, Marmolejos moved in the Second Circuit to file a successive petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the basis of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015).  *See* Dkt. No. 185.  On December 18, 2018, Marmolejos moved pursuant to Federal Rule of Civil Procedure ("Rule") 60(b)(4) for relief from my denial of his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Dkt. No. 200.  On August 13, 2019, I denied Marmolejos's Rule 60(b)(4) motion but noted that, in the event the Second Circuit granted Marmolejos's motion to file a second or successive § 2255 motion, the order was without prejudice to any claim Marmolejos may seek to file based on *Johnson*, *Barrett,* and *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016).  *See* Dkt.

6

No. 201. On June 22, 2020, the Second Circuit granted Marmolejos' motion to file a successive petition and remanded to this Court. See Dkt. No. 211.

### 3. The Instant Motion

In his instant § 2255 motion, Marmolejos alleges that (1) his Count Six and Seven convictions are unconstitutional in light of *Davis* and *Barrett*, and (2) the life sentences imposed on his Count Two and Three convictions are in excess of the maximum authorized by law. The government filed its opposition to the motion on August 26, 2020. Dkt. No. 219. Marmolejos filed an "amendment" to his motion on October 2, 2020. Dkt. No. 221.

## DISCUSSION

### A. Counts Six and Seven

Marmolejos argues that his convictions for Counts Six and Seven cannot stand in light of *Davis* because (1) Counts One, Two, and Three have been rendered invalid predicates to a § 924(c) conviction, as they could only qualify as predicate offenses under the now unconstitutional "residual" clause of § 924(c)(3)(B), and (2) it is unclear whether the jury based the § 924(c) conviction on Counts One, Two, Three, or Four. I am not persuaded. It is unnecessary to determine which offense served as the predicate for the § 924(c) conviction in the jury verdict, so long as there was in fact a valid predicate. While Marmolejos is correct that Counts One and Two are no longer valid predicates for a § 924(c) violation, the Count Four conviction remains a valid

predicate. Accordingly, Marmolejos's argument that his § 924(c) and (j) convictions must be vacated is rejected, and I need not reach the issue of whether Count Three is a valid predicate.

### 1. **Applicable Law**

In *Davis*, the Supreme Court held that § 924(c)(3)(B) (the residual clause) was unconstitutionally vague. 139 S. Ct. at 2336. Following this decision, the Second Circuit ruled that conspiracy to commit Hobbs Act robbery was no longer a valid § 924(c) predicate, because it could not qualify as a crime of violence without the residual clause. *Barrett*, 937 F.3d at 128. Courts in this district have reached the same conclusion with regard to conspiracy under § 1958. *See United States v. Pena*, No. 09 CR 341 (VM), Dkt. No. 438 at 2 (S.D.N.Y. July 6, 2020) (holding § 1958 conspiracy charge qualifies as "crime of violence" only under residual clause of 18 U.S.C. § 924(c), and thus holding it to be invalid predicate in light of *Davis*).

Drug trafficking offenses, however, are still categorically valid predicates for § 924(c) convictions. *Williams v. United States*, No. 16-CR-00256 (KMW), 2020 WL 6683075, at *2 (S.D.N.Y. July 16, 2020) ("*Dimaya* and *Davis* invalidated the residual clause of § 924(c)'s definition of 'crime of violence' but left § 924(c)'s definition of 'drug trafficking crime' intact"). To uphold a § 924(c) conviction predicated on drug trafficking, the government must show a nexus between the firearm possession and drug selling operation; in other words, possession of a firearm must be in furtherance of

a drug crime. *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005) (holding nexus between firearms offense and drug-trafficking crime sufficient so long as "gun afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking"); *United States v. Johnson*, 452 F. Supp. 3d 36, 74 (S.D.N.Y. 2019) (finding nexus between gun possession and drug trafficking sufficient to uphold defendant's § 924(c) conviction).

A number of cases have arisen where crimes of violence could no longer serve as a predicate crime for a § 924(c) conviction in light of *Davis* and *Barrett*. The Second Circuit has held, in a different context, however, that "§ 924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." *Johnson v. United States*, 779 F.3d 125, 129-30 (2d Cir. 2015) (upholding § 924(c) conviction even though conviction on predicate crime (bank robbery) was vacated, as there was legally sufficient proof that defendant committed the predicate crime). And specifically with respect to Hobbs Act conspiracy, the Second Circuit has upheld a § 924(c) conviction where there was an alternative predicate crime: drug trafficking. *See United States v. Dussard*, 967 F.3d 149, 157 (2d Cir. 2020) (upholding § 924(c) conviction following guilty plea to firearm possession with Hobbs Act conspiracy, even though *Davis* and *Barrett* rendered Hobbs Act conspiracy an invalid predicate, where record

9

made clear that defendant also possessed firearm during and in relation to a drug trafficking crime, which could serve as a predicate).

### 2. Application

While Marmolejos correctly argues that under *Davis* and *Barrett*, Counts One and Two are no longer valid predicate offenses for a § 924(c) conviction, the record is clear that there is an alternative valid predicate: Marmolejos's conviction on Count Four for drug trafficking. Indeed, Count Six -- the § 924(c) count -- charged Marmolejos with possessing a firearm during and in relation to a crime of violence "and/or" a narcotics trafficking crime, Dkt. No. 214, at 58, and Count Four charge narcotics conspiracy, Dkt. No. 214, at 57.

The underlying facts establish a nexus between the drug trafficking conspiracy and the gun possession: Marmolejos carried the two firearms at issue in the commission of a murder-for-hire, for which he was hired by a heroin-trafficking organization to kill two individuals who allegedly stole from the organization. His possession of firearms was directly in furtherance of the trafficking conspiracy. Even if Hobbs Act conspiracy is not a categorical crime of violence, Marmolejos's 924(c) and (j) convictions are supported by a valid predicate: his conviction on Count Four for narcotics trafficking. Consequently, the motion is denied in this respect.

### B. Counts Two and Three

Marmolejos contends that the life sentences imposed on Counts Two and Three were in excess of the maximum authorized by law because there was no specific finding by the jury that death resulted.

1.  **Applicable Law**

When an element of a crime -- such as "if death results" -- enhances the minimum and maximum sentences to which a defendant is exposed, that element must be submitted to the jury and found beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). This requirement can be satisfied by a jury's determination that death resulted in a separate conviction. *See Pena v. United States*, 192 F. Supp. 3d 483, 495 (S.D.N.Y. 2016). In *Pena*, the court rejected the defendant's claim that he was denied effective assistance of counsel due to counsel's failure to raise the claim that the jury must determine that death resulted for his 18 U.S.C. § 1958 conviction. *Id*. The court noted that "the jury did make a determination that a murder resulted from Pena's actions . . . having convicted Pena on Counts Seven and Eight [in violation of § 924(j)]." *Id*.

2.  **Application**

By convicting Marmolejos of a § 924(j) violation, the jury effectively determined that death resulted. This factual finding establishes the "if death results" element of 18 U.S.C. § 1958 required for imposing a life sentence. The sentence of life

11

imprisonment imposed on Marmolejos' Counts Two and Three convictions was thus not in excess of the maximum authorized by law.

## **CONCLUSION**

For the reasons set forth above, Marmolejos has failed to show a basis for relief under 28 U.S.C. § 2255. Accordingly, his petition for relief is denied. Because he has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253 (1996) (as amended by the Antiterrorism and Effective Death Penalty Act). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this order would not be taken in good faith. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

Dated:   New York, New York
         January 15, 2021

                                    __s/DC_____
                                    DENNY CHIN
                                    United States Circuit Judge
                                    Sitting by Designation