UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA : | **MEMORANDUM DECISION** |
| - against - : | |
| | 99 Cr. 1048-3 (DC) |
| THOMAS MARMOLEJOS, : | |
| Defendant. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**APPEARANCES:**        AUDREY STRAUSS, Esq.
United States Attorney for the
Southern District of New York
        By:    Marguerite Boughton Colson, Esq.
                Assistant United States Attorney
One Saint Andrew's Plaza
New York, New York 10007

THOMAS MARMOLEJOS
Defendant *Pro Se*
FCI Otisville, P.O. Box 1000
Otisville, NY 10963

**CHIN, Circuit Judge:**

On February 1, 2002, defendant Thomas Marmolejos[1] was convicted of, *inter alia*, conspiracy to commit Hobbs Act robbery and extortion; conspiracy to commit murder-for-hire; substantive murder-for-hire; conspiracy to distribute and possess with

---

[1] In prior stages of this case -- the trial, sentencing, and appeal -- defendant, defense counsel, the Government, and the courts spelled defendant's name "Marmolejas." On November 1, 2012, defendant moved to correct various clerical errors in his final judgment, including the spelling of his name to "Marmolejos." I granted his motion with respect to the spelling of his name. Dkt. No. 171 at 1.

intent to distribute one kilogram and more of heroin; using and carrying firearms in violation of § 924(c); and murder in the course of a § 924(c) violation, in violation of 18 U.S.C. § 924(j).  Presentence Investigation Report ("PSR") ¶ 10-17.  On September 19, 2002, I sentenced Marmolejos to life imprisonment; the conviction and sentence were affirmed by the Second Circuit.  *United States v. Marmolejos*, 112 F. App'x 779, 784 (2d Cir. 2004), *cert. denied, Gomez v. United States*, 546 U.S. 868 (2005).   Marmolejos, proceeding *pro se*, now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act (the "FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).  Dkt. No. 260 ("Motion").  He contends that the growing COVID-19 pandemic has made his sentence much more punitive than intended; he has substantial risk of serious illness or death if he contracts COVID-19 and/or new strains, regardless of his age or health condition; he has achieved extraordinary rehabilitation progress during the two decades of incarceration; the life sentence is excessively harsh; and the 18 U.S.C. § 3553(a) factors as applied in his particular case support sentence reduction.  Motion at 1.

For the reasons set out below, the motion is DENIED.

## BACKGROUND

The facts are set forth in detail in prior decisions of the Court.  *See Marmolejas v. United States*, No. 05 Civ. 10693 (DC), 2010 WL 3452386, at \*\*1-2 (S.D.N.Y.

Sept. 2, 2010); *United States v. Gomez*, 644 F. Supp. 2d 362, 366-67 (S.D.N.Y. 2009).  Here, I repeat only the most salient facts.

A.     **Marmolejos's Crimes, Conviction, and Sentencing**

In May 1998, Marmolejos and two other individuals (Jamie Gomez and Jonny Martinez) were hired by the Reyes heroin organization -- a large-scale heroin organization that supplied kilogram quantities of heroin in the Bronx and in Manhattan from 1996 to 1999 -- to kill Johan Pena-Perez and Nilton Duran, who had allegedly turned against the organization by stealing its heroin and cash.  PSR ¶¶ 29, 31-32.

For his part, Marmolejos operated a minivan with a secret compartment that contained firearms.  PSR ¶ 35.  The secret compartment could only be operated from the driver's seat.  Tr. at 995-96.  On May 25, 1998, Marmolejos drove Gomez and Martinez and some personnel of the Reyes heroin organization to look for Pena-Perez and Duran.  PSR ¶ 33.  The group waited four to five hours outside a building in the Bronx for Pena-Perez and Duran to exit the building, but they did not.  *Id.*

On May 26, 1998, the next day, Marmolejos drove the same group to the same location to wait again, for six hours or more.  Tr. at 334, 404, 424, 428; PSR ¶ 34. Finally, Pena-Perez and Duran exited the building, got inside a Toyota Camry, and drove away.  PSR ¶ 34.  Marmolejos drove the minivan to follow the Camry, while members of the hit team removed several firearms and silencers from the secret compartment.  PSR ¶ 35.  When the Camry stopped at a red light, Gomez, armed with a

3

Cobray 9-millimeter machine gun, and Martinez, armed with a .357 revolver, got out of the minivan, approached the Camry, and fired into the vehicle, killing Pena-Perez and wounding Duran. *Id.*

After the Camry lurched forward and crashed, Duran fled the scene pursued by an armed Gomez, who fired five additional shots before he was arrested by several plainclothes officers with the New York City Police Department. PSR ¶ 36; Tr. at 459. Meanwhile, Marmolejos drove the other individuals in the minivan off the scene and discarded the weapons. Tr. at 693-94; PSR ¶ 36. Later that evening, Marmolejos collected $37,000 from members of the Reyes heroin organization for the shooting of Pena-Perez. Tr. at 694-95.

Marmolejos was arrested on June 4, 1998, inside the same minivan that he had driven to the murder scene. PSR ¶ 39. The minivan had been painted a different color and re-stocked with a 9-millimeter pistol, a 10-millimeter semi-automatic weapon, silencers, and ammunition. *Id.*

On February 1, 2002, a jury convicted Marmolejos of conspiracy to commit Hobbs Act robbery and extortion in violation of 18 U.S.C. § 1951 (Count One); conspiracy to commit murder-for-hire in violation of 18 U.S.C. § 1958 (Count Two); substantive murder-for-hire in violation of 18 U.S.C. § 1958 (Count Three); conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin in violation of 21 U.S.C. § 846 (Count Four); murder while engaged in a major drug

4

conspiracy in violation of 21 U.S.C. §848(e)(1)(A) (Count Five); using and carrying firearms in relation to the narcotics offenses and crimes of violence charged in Counts One through Five in violation of 18 U.S.C. § 924(c) (Count Six); murder in the course of a § 924(c) violation, in violation to 18 U.S.C. § 924(j) (Count Seven); and possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k) (Count Eight).  PSR ¶¶ 10-17.  On July 25, 2002, I vacated the conviction on Count Five on inconsistency grounds.  *See United States v. Gomez*, 210 F. Supp. 2d 465, 479 (S.D.N.Y. 2002).

On September 19, 2002, I sentenced Marmolejos to life imprisonment, followed by a consecutive ten-year term of imprisonment and three years of supervised release, and $700 in special assessments.  Sent'g Tr. at 34.  The total offense level was 43 and there was a Criminal History Category of I, resulting in a mandatory Guidelines sentence of life imprisonment.  PSR ¶¶ 71-83.

Marmolejos appealed his convictions and sentence, but the Second Circuit affirmed the judgment in all respects.  *Marmolejos*, 112 F. App'x at 784.  Post-appeal, Marmolejos filed a series of motions for relief, all of which were denied.  *See, e.g., United States v. Marmolejos*, No. 99 CR. 1048 (DC), Dkt. No. 241 (denying the second or successive motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C § 2255); *United States v. Marmolejos*, No. 99 CR. 1048 (DC), Dkt. No. 201 (denying the Rule 60(b)(4) motion for relief from the denial of the motion to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255); *Marmolejas v. Mukasey*, No. 08 Civ. 59 (KKC), 2008 WL 1776593 (E.D. Ky. 2008) (denying the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241); *Marmolejas*, 2006 WL 2642130, at *8 (denying the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel).

B.  **Marmolejos's Request for Compassionate Release**

On December 15, 2020, Marmolejos filed a request with the Warden at his facility to reduce his sentence, and the Warden denied the request on February 10, 2021. Dkt. No. 260-1, 260-2.  On June 30, 2021, Marmolejos filed the instant *pro se* motion for compassionate release to reduce his life sentence to time served or a sentence of a term of years pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  Motion at 1, 27.

Marmolejos is presently 52 years old and has served approximately 260 months (21.66 years) of his life sentence.  Motion at 1.

## DISCUSSION

A.  **Applicable Law**

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as modified by the FSA, a court may reduce a defendant's sentence on motion of the Director of the Bureau of Prisons (the "BOP") or the defendant himself.  *See United States v. Gil*, No. 90 Cr. 306 (KMW), 2020 WL 2611872, at *1 (S.D.N.Y. May 22, 2020); *United States v. Patterson*, No. 17 Cr. 118-6 (KPR), 2020 WL 2571044, at *2 (S.D.N.Y. May 21, 2020).  A defendant may move for

compassionate release himself only after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  On a motion for compassionate release, the defendant bears the burden of demonstrating circumstances that warrant a sentence reduction.  *See Patterson*, 2020 WL 2571044, at *2.  A court may reduce a sentence if, "after considering the factors set forth in section 3553(a) to the extent they are applicable," it finds that there are "extraordinary and compelling reasons [that] warrant a reduction."  18 U.S.C. § 3582(c)(1)(A).

Courts were previously constrained by U.S. Sentencing Guidelines Manual § 1B1.13, but the Second Circuit has now held that courts have discretion to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *United States v. Brooker*, 976 F.3d 228, 230, 237 (2d Cir. 2020); *see also United States v. Ciprian*, No. 11 Cr. 1032 (PAE), 2021 U.S. Dist. LEXIS 18698, at *5 (S.D.N.Y. Feb. 1, 2021) ("[T]he Court is not constrained by [. . .] Sec. 1B1.13's enumeration of extraordinary and compelling reasons.").  Congress has only limited district courts' discretion in that rehabilitation alone cannot qualify as an "extraordinary and compelling reason."  28 U.S.C. § 994(t).

If a defendant shows extraordinary and compelling reasons to warrant a sentence reduction, the court still must consider the applicable factors set forth in 18

7

U.S.C. § 3553(a).  *See United States v. Israel*, No. 05 CR 1039 (CM), 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019).  Factors the court may consider include the nature and circumstances of the offense; the history and character of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and provide the defendant with needed medical care; and avoidance of unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  18 U.S.C. § 3553(a).  If a court finds the sentence imposed greater than necessary considering these factors, a reduction may be granted.  *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth.").

**B.      Application**

As a threshold matter, Marmolejos's motion is properly before the Court because more than 30 days have lapsed from the Warden's receipt of Marmolejos's request for compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A); Motion at 37; Dkt. No. 260-1, 260-2.  Moreover, the Warden eventually denied the motion.  Dkt. No. 260-1, 260-2.

First, I consider whether Marmolejos is eligible for compassionate release under section 3582(c)(1)(A), that is, whether he has demonstrated extraordinary and compelling reasons qualifying him for a sentence reduction.  Second, proceeding under

8

the assumption that he qualifies, I consider whether to grant the motion by weighing the factors set forth in section 3553(a) to the extent they are applicable. I conclude that the statutory factors weigh against granting the motion.

### 1.     Extraordinary and Compelling Reasons

In determining whether a defendant has shown "extraordinary and compelling reasons" under section 3582(c)(1)(A), courts may consider isolated factors, like medical concerns given the COVID-19 pandemic, as but "one component of the overall analysis," the totality of which may constitute sufficiently extraordinary and compelling reasons to warrant a sentence reduction. *United States v. Vargas*, 502 F. Supp. 3d 820, 828 (S.D.N.Y. 2020) (holding that the extraordinary and compelling bar was met by the combination of the defendant's rehabilitation, his desire to care for his ill mother, his medical issues given COVID-19, and a particularly harsh sentence).

Marmolejos argues that his life sentence is particularly harsh because murder-for-hire should only carry a base offense level of 32, instead of the base offense level of 43 applicable to first degree and premeditated murder. Motion at 21. This argument has no merit. As I stated in my decision on September 15, 2006, Marmolejos's murder offense was inherently premeditated because he played an active role in the murder and collected $37,000 for his involvement; the offense resulted in the death of Pena-Perez, hence triggering 18 U.S.C. § 1958, which required imposition of *mandatory* life imprisonment "if death results;" and even assuming some discretion is allowed by

the statute, the crime was a murder-for-hire where a life was taken, not a crime of passion, and thus warranted a sentence of life.  *Marmolejas*, 2006 WL 2642130, at *5; Sent'g Tr. at 33-34.

I turn to Marmolejos's other arguments, including the COVID-19 circumstances, his rehabilitation progress, his mother's old age and poor health, and the love and support demonstrated by his family and friends, to determine whether he has shown sufficiently extraordinary and compelling reasons to qualify him for a sentence reduction.

First, although Marmolejos is a fully vaccinated 52-year-old with no underlying health conditions, COVID-19 still presents a substantial risk, particularly considering the uncertainties presented by the Delta variant and breakthrough infections.  Motion at 14-15.  Marmolejos alleges that FCI Otisville, the facility where he is incarcerated, has had 108 inmate cases of COVID-19 total and two active cases at the time of his motion.  *Id.* at 16.  The proliferation of COVID-19 at FCI Otisville has resulted in punishment harsher than otherwise expected.  *See United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020) ("[T]he pandemic . . . has made [the defendant's] incarceration harsher and more punitive than would otherwise have been the case.").

Second, Marmolejos's rehabilitation efforts are noteworthy.  Marmolejos has worked his way down from a maximum-security penitentiary to a medium-security

correctional institution. Motion at 22. During his 21 years of incarceration, he received only two incident reports. *Id.* He worked constantly during his time in BOP. *Id.* He tutored inmates at USP Big Sandy, completed numerous BOP Educational and Health Programs and Vocational Programs, obtained a Legal Assistant/Paralegal Diploma, and obtained a Forklift License. *Id.* While at USP Cannan, he played a vital role in setting up a drive to collect toys, books, and clothes for underprivileged children. *Id.*

Third, Marmolejos's family circumstances warrant consideration. His mother is 75 years old and has experienced illness and ailments, including a fall, which have resulted in three hospitalizations. Dkt. No. 260-12 at 2. She would like to have Marmolejos home to assist her. *Id.* Besides his mother, Marmolejos's daughter, younger brother, nephew, and two friends all submitted letters demonstrating their support and assuring the Court that Marmolejos would be cared for upon his release. Dkt. No. 260-12, 260-13, 260-14, 260-15, 260-16, 260-17.

Even assuming the above considerations collectively establish extraordinary and compelling reasons, however, the § 3553(a) factors weigh heavily against compassionate release.

### 2.   The § 3553(a) Factors

I conclude that Marmolejos's motion should be denied because the applicable § 3553(a) factors, primarily the "nature and circumstances" of Marmolejos's offenses, weigh against release or sentence reduction. *See* 18 U.S.C. § 1883(a)(1).

11

On two consecutive days, Marmolejos drove the hitmen and the members of the Reyes heroin organization to look for and kill Pena-Perez and Duran. PSR ¶¶ 33-34. Marmolejos waited at least ten hours over the course of two days for his targets to appear. *Id*. Marmolejos operated the minivan to enable the hitmen to perform the murder of Pena-Perez. PSR ¶ 35. The weapons used for the kill were placed in a secret compartment in the minivan that could only be operated from Marmolejos's seat. *Id.* After the hitmen killed Pena-Perez and wounded Duran, Marmolejos drove the minivan to flee the scene. PSR ¶ 36. Marmolejos collected $37,000 from the Reyes heroin organization for the shooting of Pena-Perez. Tr. at 694-95. When Marmolejos was arrested on June 4, 1998, he was driving the same minivan that he had driven to the murder scene, and its secret compartment had been re-stocked with new weapons. *Id.*; PSR ¶ 39.

Additionally, at the time of sentencing, I emphasized the serious nature of Marmolejos's offenses, holding that the interest of justice required a sentence of life because a life was taken, and that the offense was a murder-for-hire, not a crime of passion. Sent'g Tr. at 33-34. Reducing Marmolejos's mandatory life sentence would not reflect the "seriousness of the offense." *See* 18 U.S.C. § 3553(a)(2)(A).

Upon weighing the factors, I continue to believe that the interest of justice requires a sentence of life imprisonment.

12

## **CONCLUSION**

For the reasons set forth above, Marmolejos has failed to show that compassionate release is warranted. His motion for compassionate release is hereby DENIED.

SO ORDERED.

Dated:     New York, New York
           August 30, 2021

\_\_\_/s/DC_____
DENNY CHIN
United States Circuit Judge
Sitting by Designation
